United States District Court
Southern District of New York
_____

JOVANI FASHION, LTD.,

                          Plaintiff,              10 Civ. 7085 (JGK)

         - against -                              MEMORANDUM OPINION AND
                                                            ORDER
CINDERELLA DIVINE, INC., ET AL.,

                          Defendants.
_____

JOHN G. KOELTL, District Judge:

        This is a copyright infringement action brought by a

manufacturer of prom dresses, Jovani Fashion, Ltd. (the

"plaintiff" or "Jovani"), against several competing

manufacturers or retailers.  Two of the defendants, Fiesta

Fashions ("Fiesta") and Unique Vintage, Inc. ("Unique"), have

moved to dismiss the complaint pursuant to Federal Rules of

Civil Procedure 12(b)(1) and/or 12(b)(6) on the grounds that

Jovani only owns copyrights in two-dimensional pictures of the

dresses and that neither the dresses nor any aspect of them is

copyrightable under the Copyright Act, 17 U.S.C. § 101 et seq.


                              I.

        When presented with motions under both Federal Rule of

Civil Procedure 12(b)(1) to dismiss for lack of subject matter

jurisdiction and Rule 12(b)(6) to dismiss for failure to state a

claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.  See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990); see also S.E.C. v. Rorech, 673 F. Supp. 2d 217, 220-21 (S.D.N.Y. 2009).

In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true.  See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor.  Id.; see also Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).  Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists.  See Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir.1986).  In so doing, the Court is guided by that body of decisional law that has developed under Federal Rule of

Civil Procedure 56.  Kamen, 791 F.2d at 1011; see also Rorech, 673 F. Supp. 2d at 221.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Arista Records LLC v. Lime Group LLC, 532 F. Supp. 2d 556, 566 (S.D.N.Y. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."  Id.; see also Rorech, 673 F. Supp. 2d at 221.

3

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); Rorech, 673 F. Supp. 2d at 221.

## II.

The following facts are undisputed, unless otherwise indicated.

Jovani is a designer and manufacturer of women's dresses, particularly evening dresses, pageant gowns, prom dresses, and cocktail dresses.  (First Amended Compl. ("FAC") ¶ 22.)  Between May and August 2010, Jovani filed copyright registration applications on and received copyright registrations for ten catalogs that they claim show artwork incorporated in dresses.  (FAC ¶¶ 33-42.)

In 2010, Jovani discovered a number of dresses that it claims incorporate artwork that is substantially similar to and

4

was copied from its designs.  (FAC ¶¶ 45-46.)  On September 15, 2010, it filed this lawsuit against eleven competing dressmakers or retailers, along with John Doe defendants, in this Court.  Of those defendants, only Fiesta and Unique have moved to dismiss the complaint; the others need not be discussed at this time.

The First Amended Complaint alleges that Fiesta manufactures and sells infringing dresses, including one style of dress that allegedly infringes Jovani style # 154416.  (FAC ¶¶ 82, 319, 321-25.)  Jovani claims that style # 154416 is protected by a visual arts copyright registration.  (FAC ¶ 319.) According to Jovani, style # 154416 "includes original artwork incorporated in a dress . . . includ[ing] the ornamental design and arrangement on the face of the fabric of the depicted dress, including but not limited to the selection and arrangement of sequins and beads and their respective patterns on the bust portion, as well as the wire-edged tulles added to the lower portion of the depicted dress."  (FAC ¶ 320.)  Additionally, although not alleged in the First Amended Complaint, Jovani asserts that the artwork includes the size of the sequins, a ruched-satin waistband, and the remainder of the multi-layered tulle portion containing the wire edging, as well as "the compilation, selection, coordination, and arrangement" of all elements.  (Pl.'s Mem. at 7.)  Pictures of Jovani's style #

154416 and Fiesta's allegedly infringing dress are attached as Appendix A.  (FAC Ex. M.)

The First Amended Complaint also alleges that Unique sells several styles of infringing dresses.  (FAC ¶¶ 63, 104, 109, 144, 147, 193, 196, 343, 346, 354, 355.)[1]

### III.

After Fiesta filed an initial motion to dismiss, Jovani amended its complaint and the Court denied Fiesta's motion as moot.  In response, Fiesta and Unique each filed a motion to dismiss.

Fiesta argues that Jovani's copyright registrations only accord copyright protection to two-dimensional images of dresses in catalogs, rather than any full, three-dimensional dress design, and that, in any event, nothing about the allegedly infringed dress is copyrightable.  Accordingly, Fiesta argues, Jovani's complaint should be dismissed pursuant to Rule 12(b)(6).  Fiesta's motion specifically discusses the aspects of dress style # 154416 that Jovani claims are copyrightable.

Unique raises the same arguments as Fiesta, with two differences.  First, Unique frames its arguments as grounds for

---

[1] When filing its opposition to the motions to dismiss, Jovani produced an expert report and the deposit submitted to the Copyright Office with the copyright registration application for dress style # 154416.  The moving defendants argue that these should not be considered.  Because they do not affect the resolution of these motions, it is unnecessary to decide whether these documents can be considered.

dismissal under both Rule 12(b)(6) and Rule 12(b)(1).  Second, Unique does not specifically discuss the copyrightability of the allegedly infringed individual dresses or their constituent parts.

## IV.

### A.

The defendants' first argument, that Jovani's copyright registrations protect only the photographic images of dresses in their registered catalogs, is easily disposed of.  The registration of a catalog as a single work is commonly used to register three-dimensional copyrightable items pictured in the catalog, rather than merely the two-dimensional pictures themselves.  See, e.g., Kay Berry v. Taylor Gifts, Inc., 421 F.3d 199, 204-06 (3d Cir. 2005); Yurman Studio, Inc. v. Castaneda, 591 F. Supp. 2d 471, 483, 493-94 (S.D.N.Y. 2008); see also 37 C.F.R. § 202.3(b)(4)(i)(A) (providing for registration of all "copyrightable elements [of published works] that are otherwise recognizable as self-contained works, that are included in a single unit of publication, and in which the copyright claimant is the same").  Indeed, the U.S. Copyright Office explicitly directs registrants to submit "identifying material, such as photographs" when registering three-dimensional works of visual art, rather than "the three-

7

dimensional work" itself.  U.S. Copyright Office, Copyright
Registration for Works of the Visual Arts 4, Circular 40, Nov.
2010 (emphasis added).  Fiesta accurately points out that the
registrations themselves identify the work created as two-
dimensional artwork.  (FAC Ex. C.) However, an "administrative
classification . . . has no significance with respect to the
subject matter of the copyright or the exclusive rights
provided" by registration.  17 U.S.C. § 408(c)(1); see also
Yurman Studio, 591 F. Supp. 2d at 494.


### B.

#### 1.

The question of whether the constituent design elements of
prom dresses (and, in particular, the elements of Jovani's style
# 154416) can be copyrightable requires much more analysis.
Under the Copyright Act, "pictorial, graphic, and sculptural
works" are generally eligible for copyright protection, subject
to various requirements.  17 U.S.C. § 101; see also Chosun
Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d
Cir. 2005).  The Act defines such works to include "works of
artistic craftsmanship insofar as their form but not their
mechanical or utilitarian aspects are concerned"; however, it
protects "the design of a useful article," defined as "an
article having an intrinsic utilitarian function that is not

merely to portray the appearance of the article or to convey
information" or "[a]n article that is normally a part of a
useful article," "only if, and only to the extent that, such
design incorporates pictorial, graphic, or sculptural features
that can be identified separately from, and are capable of
existing independently of, the utilitarian aspects of the
article."  17 U.S.C. § 101; see generally Chosun, 413 F.3d at
327-30.

It is well settled that dress designs are useful articles
for the purposes of the Copyright Act and thus "are not
typically copyrightable."  Folio Impressions, Inc. v. Byer
Calif., 937 F.2d 759, 763 (2d Cir. 1991); see also Whimsicality,
Inc. v. Rubie's Costume Co., 891 F.2d 452, 455 (2d Cir. 1989); 1
Nimmer on Copyright, § 2.08(H)(3) (2011).  However, as with all
useful articles, elements of dress designs may be protected
where they are "physically or conceptually" separable from the
useful article.  See 17 U.S.C. § 101; Chosun, 413 F.3d at 328-
29; Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d
989, 993 (2d Cir. 1980).  Only "design elements that can be
conceptualized as existing independently of their utilitarian
function are eligible for copyright protection."  Chosun, 413
F.3d at 329 (internal quotation marks and citation omitted).  It
is not enough that a useful article or one of its elements
"fall[] within a traditional art form" or be "aesthetically

9

satisfying and valuable"; "aesthetic or artistic features" alone do not make a design element physically or conceptually separable.  Carol Barnhart Inc. v. Econ. Cover Corp., 773 F.2d 411, 418 (2d Cir. 1985).

The exception for separable elements of useful articles has proven difficult to apply, and courts "have twisted themselves into knots trying to create a test to effectively ascertain whether the artistic aspects of a useful article can be identified separately from and exist independently of the article's utilitarian function."  Masquerade Novelty, Inc. v. Unique Indus., Inc., 912 F.2d 663, 670 (3d Cir. 1990); see generally 1 Nimmer on Copyright 2.08(B)(3).  Of the two forms of separability, physical separability is somewhat easier to analyze: a component of a useful article is physically separable and therefore copyrightable if it "can actually be removed from the original item and separately sold, without adversely impacting the article's functionality."  Chosun, 413 F.3d at 329.

Conceptual separability, however, is more abstract and less readily understood; no fewer than six tests have been suggested to explain it.  See Galiano v. Harrah's Operating Co., 416 F.3d 411, 417 & n.13 (5th Cir. 2005).  In a case involving Halloween costumes, for example, the Court of Appeals for the Second Circuit held that design elements might be conceptually

separable if the plaintiff could show that they "invoke in the viewer a concept separate from that of the costume's 'clothing' function, and that their addition to the costume was not motivated by a desire to enhance the costume's functionality qua clothing." Chosun, 413 F.3d at 330.  The Court of Appeals has also held design elements to be conceptually separable when they "can be identified as reflecting the designer's artistic judgment exercised independently of functional influences" and do not "reflect a merger of aesthetic and functional considerations." Id. at 329 (quoting Brandir Int'l, Inc. v. Cascade Pac. Lumber Co., 834 F.2d 1142, 1145 (2d Cir. 1987)). At times, it has asked whether an element's "ornamental aspect" was "primary" over a "subsidiary utilitarian function." Kieselstein-Cord, 632 F.2d at 993.  The Court of Appeals for the Seventh Circuit has largely followed the "judgment exercised independently of functional influences" formula. See Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 372 F.3d 913, 931 (7th Cir. 2004) (quoting Brandir, 834 F.2d at 1145).  The Court of Appeals for the Fifth Circuit, by contrast, considered and rejected that approach in favor of a "likelihood of marketability" test, holding that "conceptual separability exists where there is substantial likelihood that even if the article had no utilitarian use it would still be marketable to some significant segment of the community simply because of its

aesthetic qualities," Galiano, 416 F.3d at 419 (quoting 1 Nimmer on Copyright § 2.08(B)(3)) — even as it acknowledged that that test "might be a sub-optimal prophylactic rule," id. at 421. See also Poe v. Missing Persons, 745 F.2d 1238, 1243 (9th Cir. 1984) ("[T]he district court may also consider the admissibility of evidence as to [an article at issue's] marketability as a work of art.").

None of the Second Circuit cases has purported to establish an exclusive test for determining conceptual separability. Indeed, the most recent entry in the field, Chosun, appears to endorse both the "separate concept" test and the "judgment exercised independently of functional influences" test. See Chosun, 413 F.3d at 329. It is therefore unclear what test should be applied in a case such as this, involving design elements on dresses. Under any of the tests, however, the outcome of this case is the same, and therefore there is no need to consider extensively the differences among the various tests.


2.

Unique argues broadly that Jovani "cannot obtain copyright protection on any of the clothing depicted in the sales catalogs because . . . items of clothing are 'useful articles' which are not copyrightable." (Unique Mem. at 7.) This argument overstates the general rules outlined above.

12

Useful articles, as already explained, are largely
unprotected by the Copyright Act, except to the extent that they
"incorporate[] pictorial, graphic, or sculptural features that
can be identified separately from, and are capable of existing
independently of, the utilitarian aspects of the article."  17
U.S.C. § 101.  While the meaning of this caveat may be unclear,
it cannot be disputed that it provides protection to some design
components of useful articles — which includes clothing.  See
Chosun, 413 F.3d at 328 ("[S]eparable elements in clothing, to
the extent that they exist, may be eligible for copyright
protection.").  The Court cannot bypass this inquiry merely
because clothing designs are rarely protectable.  Indeed, even
the Copyright Office Policy Decision on which Unique relies
states only that the Copyright Office has "generally refused to
register claims to copyright in three-dimensional aspects of
clothing" and that the Office had "registered a few narrowly
drawn claims in certain three-dimensional fanciful or animal-
shaped items that can be worn."  United States Copyright Office
Policy Decision: Registrability of Costume Designs, 56 Fed. Reg.
56530, 56531 (1991) (emphasis added) (footnote omitted).

Unique has not made any argument that the particular
dresses or design elements that it is alleged to have infringed
are unprotectable.  Absent such an argument, Unique's motion
must be denied.

13

3.

Fiesta's motion is substantially more specific.  Fiesta
argues that the single dress design it is alleged to have
infringed, style # 154416, lacks any copyrightable elements.
Unlike Unique's motion, Fiesta's motion allows the Court to
assess the separability of the allegedly protected elements in
the dress at issue.

As a preliminary matter, the parties dispute what design
elements are actually alleged in the First Amended Complaint.
Fiesta would limit the Court's consideration to the elements
particularly mentioned in the First Amended Complaint: "the
selection and arrangement of sequins and beads and their
respective patterns of the bust portion, as well as the wire-
edged tulles added to the lower portion of the depicted dress."
(FAC ¶ 320.)  Jovani construes the First Amended Complaint to
allege other allegedly protectable design elements, including
the size of the sequins, a ruched-satin waistband across the
midriff of the dress, and the multi-layered tulle portion that
covers the wearer's upper legs, along with "the compilation,
selection, coordination, and arrangement" of all these
components.  (Pl.'s Mem. at 7.)

Although Jovani did not explicitly identify every design
element it now claims is protected in the First Amended
Complaint, it did include a picture of the dress as an exhibit

14

attached to the complaint.  This allows the Court to consider
design elements visible in the picture, because "[i]n addition
to the factual allegations pled in the complaint, the Court
should also consider documents attached to the complaint as
exhibits or incorporated into the complaint by reference."
Gregori v. 90 William St. Dev't Grp. LLC, No. 09 Civ. 4753, 2010
WL 3001979, at *3 (S.D.N.Y. July 20, 2010); cf. Peter F. Gaito
Architecture, LLC v. Simone Dev't Corp., 602 F.3d 57, 64 (2d
Cir. 2010) ("[W]here, as here, the works in question are
attached to a plaintiff's complaint, it is entirely appropriate
for the district court to consider the similarity between those
works in connection with a motion to dismiss, because the court
has before it all that is necessary in order to make such an
evaluation.").  Accordingly, the Court will consider all of the
elements of the dress that Jovani claims are protectable.

Based on the picture provided by Jovani, it is clear that
none of the elements of dress style # 154416 are physically or
conceptually separable from the dress as a whole.  For the
purposes of physical separability, the Court acknowledges that
the individual elements can be physically removed from the dress
without wholly destroying the dress's functionality.  But
physical separability requires that a design element "can
actually be removed from the original item and separately sold,
without adversely impacting the article's functionality."

15

Chosun, 413 F.3d at 329 (emphasis added).  It is not enough that
an element can be ripped off the larger useful article; it must
have some value in its freestanding form (above, of course, the
value of its constituent material).  Jovani does not suggest any
way in which any of the distinct elements it identifies could be
reused and resold, and none is apparent.  Instead, each element
is plainly usable only as a component of a dress, or, at best, a
similar item of clothing such as a skirt or blouse.

     Nor do any of the various tests for conceptual separability
protect the elements of the dress, either individually or as a
group.  First, Jovani does not claim that the elements of the
dress "invoke in the viewer a concept separate from that of the
[dress's] 'clothing' function."  Chosun, 413 F.3d at 330.
Although perhaps some vague association with the aquatic might
be found in the dress's aquamarine motif, a bar set so low would
allow the copyrighting of such a vast array of clothing that the
general inapplicability of the Copyright Act to clothing would
be a nullity.

     Second, the various items do not "reflect[] the designer's
artistic judgment exercised independently of functional
influences."  Brandir, 834 F.2d at 1145.  Instead, each of the
individual elements is plainly fashioned to fit the specific
needs of a prom dress.  The cloth swatch containing the sequins
and beads is formed to compose the bust portion of the dress;

the ruched-satin fabric is shaped into a waistband; and the layers of tulle make up the dress's skirt. Although <u>different</u> choices could have been made in each area, it is clear that the artistic judgment was exercised with an eye toward the basic requirements of a dress and thus was not exercised independently of functional influences. Here again, the plaintiff's argument would render virtually all clothing copyrightable.

Third, the elements' ornamental aspects are not "primary" over the elements' "subsidiary utilitarian function." <u>Kieselstein-Cord</u>, 632 F.2d at 993. The primary role of each element is to contribute to an attractive prom dress, or at least to attempt to do so. Jovani argues as if a prom dress's sole function were to cover the body, with any aesthetic appeal being merely incidental. This is, to say the least, a curious position for a designer of prom dresses to take. Aesthetic appeal is a core purpose of a prom dress. Given the purpose of a prom dress, a design element's decorative or aesthetic qualities will generally not suffice to trump its utilitarian function of enhancing the wearer's attractiveness. <u>See</u> <u>Whimsicality</u>, 891 F.2d at 455 ("[C]lothes are particularly unlikely to meet [the separability] test — the very decorative elements that stand out being intrinsic to the decorative function of the clothing."); <u>cf.</u> 1 Nimmer on Copyright 2.08(B)(3) ("Applying this reasoning, no attractively shaped

17

useful article could be said to have utility as its 'sole
intrinsic function,' because all have the additional function of
being 'decorative.'  The Regulation would thus cease to
constitute a meaningful barrier to copyright.").

Fourth, none of the elements has any "likelihood of
marketability."  Galiano, 416 F.3d at 421.  As discussed above,
removed from the dress, none of the elements has any independent
marketable worth.  This is not a case where a designer has
created an original artwork that could be translated into
another medium or marketed as a freestanding artwork, such as a
particular human or animal face, see, e.g., Pivot Point, 372
F.3d at 931, or a sculpture that happens to take the form of a
belt buckle, see Kieselstein-Cord, 632 F.2d at 993.  Rather, if
not used on a women's dress or a very similar item of clothing,
the elements have no apparent marketable use.

Indeed, at argument, Jovani conceded that the individual
elements of the dress (such as the pattern of sequins) were not
copyrightable in isolation.  Jovani acknowledged that there is
no discernible pattern of sequins and none is apparent from the
photo of the dress.  Rather, Jovani argued that the "selection,
arrangement, and coordination" of elements is itself a part of
the original artwork incorporated in the dress, and that those
authorial choices are conceptually separate and copyrightable.
By making this proposition, Jovani effectively undercuts its

18

claim of copyrightability.  It is only the constituent elements of the useful article that are physically or conceptually separable from that article that are copyrightable.  By arguing that the individual elements are not copyrightable, but only their "selection, coordination, and arrangement," Jovani undercuts any argument that those elements are conceptually separable from the dress itself.

Jovani primarily relies on Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996 (2d Cir. 1995), a case involving children's sweaters featuring fall-themed fabric appliqués designed to resemble leaves, squirrels, and acorns.  In Knitwaves, the Court of Appeals held that "a work may be copyrightable even though it is entirely a compilation of unprotectible elements" based on the "original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." Id. at 1004 (quoting Feist Publ'ns., inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 358 (1991)).

Jovani overlooks two key differences between Knitwaves and this case.  First, Knitwaves did not address the issue of copyrightability.  Knitwaves considered whether there was infringement of the original works because of the substantial similarity of the infringing works.  It did not consider the copyrightability of the original works because the defendant did not dispute the validity of the plaintiff's copyrights.  Id. at

1002.  The Knitwaves court looked at the arrangement of the individual components of the sweaters at issue — the placement and method of application of leaves and other artwork, for example — only to determine whether the defendant's sweaters were substantially similar to the plaintiff's copyrighted material.

Second, Knitwaves concerned fabric designs.  Knitwaves, 71 F.3d at 1002.  Fabric designs, unlike clothing designs, "are considered 'writings' for purposes of copyright law and are accordingly protectible."  Id. at 1002; see also Folio Impressions, 937 F.2d at 763.  Jovani has conceded that it is not claiming a copyright in the fabric designs of its dress; rather, it is claiming a copyright in the way it has manipulated various elements that it uses with the fabric.  Knitwaves, unlike this case, concerned the pattern of an object — a fabric design — that generally could be copyrightable in isolation. This is not the case with Jovani's dresses.[2]

---

[2] Jovani also cites Eve of Milady v. Moonlight Design, Inc., No. 98 Civ. 1549, 1998 U.S. Dist. LEXIS 21288 (S.D.N.Y. Aug. 11, 1998), in which bridal dresses and accompanying lace designs were held copyrightable. Like Knitwaves, Eve of Milady concerned fabric designs that were themselves copyrightable, and is therefore distinguishable from this case.  See id. at *2-3; see also Eve of Milady v. Impression Bridal, Inc., 957 F. Supp. 484, 489 (S.D.N.Y. 1997) ("Because lace designs are a form of fabric designs, I find that plaintiffs' lace designs are copyrightable."). Moreover, the brief discussion of copyrightability in Eve of Milady does not discuss the separability of any copyrightable elements, and all discussions of individual dress components such as sleeves and skirting is in the context of substantial similarity, rather than copyrightability.  See Eve of Milady, 1998 U.S. Dist. LEXIS 21288, at *13-29.

Similarly, the Supreme Court case from which Knitwaves drew the "selected, coordinated, and arranged" language is also inapposite.  It concerned compilations, which are specifically protected by the Copyright Act to the extent of the author's contributions.  See 17 U.S.C. § 103(b); Feist Publ'ns, 499 U.S. at 350-51.  Useful articles, by contrast, are explicitly excluded from protection, except to the extent that their features are separable from their utilitarian aspects.  Id. § 101.  It is not readily obvious why the basic characteristics of compilations — their selection, coordination, and arrangement — whould suffice to render useful articles copyrightable.[3]

Accordingly, it cannot be reasonably found that Jovani's dress style # 154416 is protected by a valid copyright.  Because this is the only dress style that Fiesta is alleged to have infringed, Fiesta's motion to dismiss is granted.

---

[3] Jovani also relies on Express, LLC v. Fetish Group, Inc., 424 F. Supp. 2d 1211 (C.D. Cal. 2006).  Express found that an arrangement of unprotected lace trim on a tunic could be copyrightable, but found that only a particular embroidery design was, in fact, copyrightable in that instance.  Id. at 1221-22, 1224-25, 1227.  Moreover, Express and the Ninth Circuit case on which it relies make clear that the bar for copyrightability due solely to selection and arrangement is quite high: "a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Id. at 1225 (quoting Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003)).  Neither Satava nor Express has ever been cited by a court within the Second Circuit, and, if they were applied here, their strict test would not be satisfied by the few items constituting the arrangement on style # 154416.

## CONCLUSION

For the foregoing reasons, Unique's motion to dismiss is denied and Fiesta's motion to dismiss is granted.   The Court previously gave Jovani the opportunity to amend its amended complaint in response to the defendants' first motion to dismiss, and plainly stated that any dismissal would be with prejudice.   (Doc. No. 62.)   Accordingly, the dismissal of Jovani's claim against Fiesta is with prejudice.   See, e.g., Abu Dhabi Commercial Bank v. Morgan Stanley & Co., No. 08 Civ. 7508, 2009 WL 3346674, at *2 (S.D.N.Y. Oct. 15, 2009) ("[A] dismissal with prejudice is generally appropriate where a court puts a plaintiff on notice of a complaint's deficiencies and the plaintiff fails to correct those deficiencies after amendment."); id. at *2 n.14 (collecting cases).

The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:    New York, New York
           July 6 , 2011

                                John G. Koeltl
                        United States District Judge